**D. TYLER FRANCIS**
Attorney at Law
State Bar No. 15735
222 N. Court Ave.
Tucson, Arizona 85701
Dtylerfrancis@outlook.com
(520) 882-2100

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　　Plaintiff,<br>vs.<br>Timothy Scott Waltermire Jr.,<br>　　　　　Defendant. | Case No. 4:22-cr-01857-JCH-BGM-6<br><br>**SENTENCING MEMORANDUM** |

Defendant submits the follows Sentencing Memorandum for the Court's consideration in imposing sentence pursuant to Federal Rules of Criminal Procedure 32(i)(4)(A)(ii) and 18 §3553(a)(1).

Based multiple mitigating factors under 18 U.S.C. § 3553(a)(1), and reasons for a variance in this case, Defendant Timothy Scott Waltermire requests a sentence of five years of probation in this matter.

Mr. Waltermire is before the Court with zero criminal history points. During the pendency of these proceedings, he has maintained employment, taken care of his family, followed all Court ordered release conditions, reported as directed to pretrial services and attended all required Court appearances. He has accepted responsibility for his actions and done what he could to mitigate his offense.

**I. OFFENSE CONDUCT:**

Mr. Waltermire became involved in this offense when a co-worker asked him if he could sell him a weapon. Unbeknownst to Mr. Waltermire,

1

the co-worker, Co-Defendant Julian Canastillo, was working for an organization whose purpose was to smuggle guns into Mexico. Initially, Mr. Waltermire transferred guns he had in his possession, but Mr. Canastillo began to make specific requests for weapons and Mr. Waltermire brought others in to help him purchase the weapons. Ironically, Mr. Waltermire had started the process of getting a gun dealer's license and had the paperwork in his truck when he was detained during a search of his property and subsequent questioning. Mr. Waltermire had been doing sales of firearms through social media where he posted personal guns he wished to sell. He believed selling guns he had built or purchased was a lucrative sideline to his hobby of buying, fixing and reselling vehicles. He was trying to support his family and take care of a seizure disorder diagnosed in two of his children.

Mr. Waltermire came to the attention of ATF Agents after they received information about multiple identical gun purchases. Initially, ATF Agents approached Co-Defendents, Cline and Joiner, and they agreed to contact Mr. Waltermire and allow Agents to listen in and record the conversation. Mr. Waltermire was not informed that Agents were present and that he was being recorded. During the conversation, Mr. Waltermire acknowledges that he told Mr. Cline and Joiner how they should discuss the purchases with ATF Agents. That being said, Mr. Waltermire told the Mr. Cline that he had followed up on Mr. Cline's request to get some of the firearms returned and that Mr. Waltermire was told "they would not be coming back." Mr. Waltermire told Mr. Cline that he had stopped any involvement with firearms after he learned the ATF was investigating Mr. Cline and Mr. Joiner, and after that phone call, Mr. Waltermire stopped all dealings with Mr. Canastillo.

During his participation in the offenses, Mr. Waltermire never hid or concealed his identity beyond asking Mr. Cline and Mr. Joiner to pick up the

2

firearms at the Catalina Pawn Shop after he had made on-line orders from Palmetto State Armory. Of note is that purchases were made using Mr. Waltermire's credit card and contact information through the Palmetto State Armory Website and listed Mr. Cline and Mr. Joiner as the recipients. The purchases were then picked up at the Catalina Pawn Shop by Mr. Cline and Mr. Joiner who filled out the ATF 4473 Forms.

On May 4th, a search warrant was served on Mr. Waltermire and ATF Agents seize numerous firearms and paperwork. At the conclusion of the Search, Mr. Waltermire waived his right to an attorney and explained, in detail, his involvement with Mr. Canastillo, and when he stopped working for Mr. Canastillo. Mr. Waltermire's statements were consistent with information Agents had already discovered and clearly show that Mr. Waltermire was only one link in the operation, a source of guns for Mr. Canastillo. Even though the Indictment [Dkt. #20] lists "Daniel Canastillo," as a participant in Counts 2-6 to which Mr. Waltermire pled, Mr. Waltermire never had any direct contact with him.

After the search of his property was complete and Agents finished their interview, Mr. Waltermire was released at the scene without any conditions or instructions- in particular, he was never provided with an ATF warning about his conduct. Still, Mr. Waltermire clearly understood that his conduct was illegal and afterwards had no more associations with Mr. Canastillo, and from the information in the indictment, Mr. Canastillo moved on to new sources for his weapons. On September 15, 2022, an indictment issued, followed by an arrest warrant on September 16, followed by Mr. Waltermire's arrest on September 20, 2022. Mr. Waltermire was released under pretrial services conditions, where he has remained, complying with all condition without any violations.

## II. 18 U.S.C. §3553 FACTORS:

### A. Standard 18 U.S.C. §3553 Factors Warranting a Variance:

1) **Vocational Skills:** Mr. Waltermire has extensive skills in construction and mechanics, and has the ability to maintain employment and support himself and his family.

2) **Mental and Emotional Condition to the Extent That Such Condition Mitigates the Defendant's Culpability or to the Extent That Such Condition Is Otherwise Plainly Relevant:** Mr. Waltermire has been focused on two of his children's seizure disorder, requiring extensive doctor's visits, additional medical expenses and personal stress due to worry about his daughter and paying for medical expenses related to treatment.

3) **Previous Employment Record:** Mr. Waltermire has always been employed and has worked towards improving his financial condition. He has the means to repay any restitution and believes he can continue to contribute to the community.

4) **Family Ties and Responsibilities:** Mr. Waltermire is married with one biological child and three stepchildren he has helped raise. His biological daughter and one stepson are still under his care and need additional support due to a seizure disorder. Mr. Waltermire continues to support his family financially and emotionally.

5) **Community Ties:** Mr. Waltermire, as demonstrated by his letters of support, clearly provides value to his community- he has assisted a number of his friends and family and used his skills to benefit others.

4

6) **Role in the Offense**:   Mr. Waltermire initially sold a Glock firearm to Mr. Canastillo. Mr. Canastillo than approached him with specific weapons requests and Mr. Waltermire agreed. Mr. Waltermire had Mr. Joiner and Mr. Cline pick up weapons from Catalina Pawnshop and then assembled them and delivered them to Mr. Canastillo.   When Mr. Waltermire stopped providing weapons, Mr. Canastillo sought other sources.   While the enhancement for being a mid-range participant applies, Mr. Waltermire was still only a part of the pipeline, easily replaced when he was no longer of use. He is not entitled to a departure, but the Court can consider whether his participation should result in a significant enhancement to his final sentence.

7) **Criminal History:** Mr. Waltermire has a single DUI from 2012 and no criminal history points.   When co-defendant's informed him of the nature of the offense- namely a federal firearms violation with weapons going to Mexico, Mr. Waltermire attempted to retrieve the last batch and stopped all further illegal activities.   Mr. Waltermire has been on pretrial services conditions for approximately two years without any violations.

8) **Degree of Dependence Upon Criminal Activity for a Livelihood:**   Mr. Waltermire was trying to earn additional money for his family. He has continued to remain employed as demonstrated by his letters and can support himself and his family on the income he currently earns. He was not supporting himself through his criminal activities.

9) **Education:** While Mr. Waltermire has only has a G.E.D., the manor in which he obtained it, by focusing on taking the classes and passing the test in order to get a better job is a factor

5

demonstrating his ability to achieve goals, his desire to improve himself and his ability to rehabilitate.

## B. FACTORS WHICH [HAVE] NOT BEEN TAKEN INTO CONSIDERATION BY THE SENTENCING COMMISSION IN FORMULATING THE GUIDELINES:

### 1. <u>Mr. Waltermire Exited the Conspiracy When Confronted by the Co-Defendants.</u>

While the conspiracy Counts in the indictment are being dismissed pursuant to his plea, Mr. Waltermire's decision to voluntarily exit from the conspiracy after his telephone call with Co-Defendant' Cline and Joiner can still be considered as a mitigating factor in his case.

It is clear that Mr. Canastillo procured weapons from many sources to consolidate and transfer to Mexico. When one source dried up, either through arrest, intervention by ATF Agents, or, in Mr. Waltermire's case simply refusing to sell any more weapons, Mr. Canastillo found another person to buy weapons on his behalf. In *United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992), "In our view the liability for substantive fraud offenses is based on participation in a fraudulent scheme, for in this circuit a defendant who is a "knowing participant" in such a scheme is vicariously liable for co-schemers' uses of the mails or wires. [*United States v. Dadanian*, 818 F.2d 1443, 1446 (9th Cir.1987)], Withdrawal ends the defendant's knowing participation, and therefore can negate the element of use of the mails or wires." *Id.* at 1263. (Defendant Lothian had been convicted of a number of mail and wire-fraud counts but not as part of a conspiracy and Court found that he was not responsible for four of eleven counts in the verdict because he was not responsible for conduct during his

absence in the scheme). This rule was also cited in *United States v. Stapleton*, 293 F.3d 1111 (9th Cir. 2002).

The instant case is a multi-defendant case involving a large number of weapons being exported to Mexico by some of the co-defendants. Mr. Waltermire " admits that he was aware that there was a high probability that the firearms were to be exported from the United States into Mexico, and he deliberately avoided learning the truth. The defendant admits that he was willfully ignorant of the destination of the firearms mentioned in this factual basis." While Mr. Waltermire should have determined that his illegal conduct was resulting in exporting weapons to Mexico, when he was confronted with it by the Co-Defendants Cline and Joiner, he made affirmative, though futile, efforts to retrieve a shipment and stopped his participation with Mr. Canastillo. The Court should consider his acknowledgement of the nature of the offense and his steps to mitigate the damages he caused.

### 2. The Court Can Consider the Actions of Catalina Pawn and Palmetto State Armory in Considering Mr. Waltermire's Offense.

Mr. Waltermire ordered the parts for numerous identical weapons from Palmetto State Armory, under his own name and using a credit card linked to his bank account with his name and address. He did not use any other accounts, names or businesses to order the parts he used to assemble the firearms. He did this on multiple occasions, from December of 2021 through February of 2022, buying the multiple identical weapons and receivers. There do not appear to be any prohibitions against selling large numbers of identical firearms to individuals. The bulk sellers of these weapons are required to comply with federal firearms laws and fill out forms and make reports to the Bureau of Alcohol, Tobacco and Firearms Counsel, but there conduct is otherwise unregulated- Counsel inquired as to whether

there had been any investigation and was informed that no legal violations had occurred even though they sold Mr. Waltermire 34 rifles, 80 receivers, 21 pistols [Draft PSR ¶55] picked up by Mr. Cline and Mr. Joiner in a three month period.

Clearly this does not excuse Mr. Waltermire's conduct, but it does beg the question of what the arms dealers thought he was going to do with the firearms, as they were clearly outside the realm of personal use and were clearly going to be resold or transferred. While the dealers have no obligation to stop or warn an individual, in Mr. Waltermire's case if the sale had been flagged and he had been notified of the nature of the crime he was committing, he would have stopped, as he did when he was informed by Mr. Cline and Mr. Joiner, and the nature of his offense would have been substantially mitigated.

"There may, however, be unusual circumstances in which substantial victim misconduct would warrant a reduced penalty in the case of a non-violent offense. For example, an extended course of provocation and harassment might lead a defendant to steal or destroy property in retaliation." In *Koon v. U.S.* 518 U.S. 81, (1996), the Supreme Court held: "A downward departure under §5K2.10 was justified because the punishment prescribed by §2A2.2 contemplates unprovoked assaults, not cases like this where what begins as legitimate force in response to provocation becomes excessive." *Id* at 83.

In this case, a departure does not apply and is inappropriate- however a variance may be warranted as the logic is the same- Palmetto State Armory and Catalina Pawnshop sold groups of identical weapons on multiple occasions paid for by a single credit card of Mr. Waltermire's and picked up by two buyers, without asking any questions as to the ultimate destination of the weapons. How they did not know that these weapons were not going to be resold or transferred in some manner, especially given Tucson's

proximity to Mexico, is unfathomable. In each case they were paid a transaction fee per firearm. In addition, Palmetto State Armory is clearly marketing its products to produce sales [*See* Exhibit 1, Palmetto State Armory website]. While the legal section of the website listed on another page does have a warning against "straw purchasers," the company clearly encourages the sales of a variety of weapons. Both of the companies rely on ATF enforcement and have washed their hands of any responsibility to the community at large.

### 3. Extraordinary Restitution.

Mr. Waltermire has expressed his remorse and shame for committing these offenses and has a plan to pay off the restitution owed to the government. He will bring a significant first payment to his sentencing and expects to be able to continue to pay on probation or after his sentence is completed. While extraordinary restitution does not appear to have been considered but the Ninth Circuit, (It was noted as a possible factor in the dissent in *United States v. Miller*, 991 F.2d 552 where Judge Tang opined: "Similarly, in United States v. Garlich, 951 F.2d 161, 163 (8th Cir.1991), the Court held that a downward departure would be justified where the "extent and timing of Garlich's restitution [were] sufficiently unusual."(Dissent, *Id.* at 588) (9th Cir. 1993). The 11th Circuit has held that extraordinary restitution would support a variance in *United States v. Kim* 364 F.3d 1235 (11th Cir. 2004); and the 8th Circuit in *United States v. Garlich*, 951 F. 2d 161 (8th Cir 1991).

### III. CONCLUSION

Mr. Waltermire has accepted responsibility for his actions, has significant family support from his children and employer. At the time of

the offense, he was working full-time and supporting his family. He acknowledged that the offense has serious consequences in the United States and Mexico and that he was part of a supply chain providing weapons to Mexico. He is hopeful that the Court will see this as the aberration it is and that the offense was mitigated by his later actions and will not be repeated. Mr. Waltermire hopes he will be able to continue to take care of himself and children and regrets his decision. Should he receive a custodial sentence, when he is released from custody, he has employment, housing and resources available live a law-abiding and productive life. Therefore a variance and a sentence of probation meets 18 U.S.C. § 3553 guidelines and is appropriate in this case.

RESPECTFULLY SUBMITTED this 26th day of February 2025.

By: S/ D. TYLER FRANCIS
D. TYLER FRANCIS
ATTORNEY FOR DEFENDANT

ECF copy to the Parties.